Mr. Gates, Mr. Iverson, you can come forward. It looks to me like your audience is meeting. You missed the best part. Whenever you're ready, Mr. Gates will hear from you. May it please the court, Mr. Iverson. Brian Gates of the Forsyth County Bar representing Anton Caluori. Mr. Caluori's constitutional liberty interest in being free from forced medication doesn't evaporate just because he's on supervised release or because he's been convicted of a crime. According to the record, in this case, Mr. Caluori stopped taking his prescribed medication sometime in June 2016. He was committed for 28 days in October of 2016 and was not forcibly medicated during that time. Most tellingly, that was when he was committed to the state court procedure. Most tellingly, he was released because even though he didn't cooperate in mental health treatment, he wasn't forcibly medicated. The treating doctor concluded he wasn't a danger to himself or others. And looking at medical records from when he was daily observed during that commitment, he was described as calm. I counted up, that appeared 87 times in the records during his commitment. Appropriate, 52 times. Respectful, 28 times. He never displayed any violence, never threatened anyone, never engaged in any of the kind of behavior we found in the Holman case. The Holman case tells us that only an essential or overriding governmental interest justifies forced medication. Those facts just didn't exist here. Following the commitment, Mr. Caliore was arrested, he was on supervised release, and he remained in jail until his supervised release was revoked in March of 2017. During that time, he wasn't forcibly medicated. No evidence he threatened anybody, failed to cooperate with anyone at the jail, did any of the kind of conduct that led to the forced medication in the Holman case. In this case, there was no need for Mr. Caliore to be medicated to restore his competency, and there was no evidence that he was a danger to himself or others. In spite of the absence of any indication that Mr. Caliore was a danger, even during that entire period where he was unmedicated, the court ordered him to take the prescribed antipsychotic medicine. It was clear during the hearing that the opinion of the medical professionals supports the belief that Mr. Caliore might be better off if he took the prescribed meds. I'm not really qualified to dispute that he had a serious psychiatric diagnosis, but that is not the test that he would be better off, that maybe he would be easier to manage. The test is whether he was dangerous to himself or others, and that standard simply was not met here. And unless the court has any questions, that would be my argument. Thank you. Mr. Iverson. Good morning. Eric Iverson for the United States. May it please the court. The district court in this case was tasked with employing a classic balancing test. Did Mr. Caliore's potential for danger override, outweigh, his recognized liberty interest in avoiding a compelled antipsychotic medication? The district court considered numerous witness testimony, documents, the record from a forced medication proceeding on a cell hearing from the sentencing district court. And this information covered Mr. Caliore's underlying mental health-driven violent crime, mental health history, and recent conduct. The district court, considering the totality of the circumstances, applied its discretion and exercised its broad latitude in the area of conditions of supervised release. In a detailed opinion, the court found that Mr. Caliore's danger to society did outweigh his liberty interest in this case. The United States would ask that this court not disturb that finding. In order to find, or in order to force or compel someone to take antipsychotic medication, a court must consider four things, and weigh four things. Is the individual a danger to themselves and others? The nature of the liberty interest at stake, which has been recognized by the Supreme Court, is the treatment medically appropriate, and is there a less intrusive alternative? Here, the district court did find that Mr. Caliore was a serious risk to himself and the public. Mr. Caliore's position, I think, or does view his conduct through too narrow of a lens. This case is, it's essential to view this case through the lens of the underlying conviction, which is undisputably mentally health-driven. Mr. Caliore was convicted of assaulting two federal law enforcement officers and threatening the President of the United States. Secret Service and another law enforcement agent responded to his home after he sent emails to the White House and the FBI making threats of death. They announced themselves as law enforcement, took Mr. Caliore a minute to come to the door, and when he came to the door, he was dressed with a bandolier of shotgun shells around his chest. He was armed with a knife, a pistol on his ankle, and he had his hand behind his back. When they asked him to show his hands, he displayed a shotgun, which they ordered him to drop. Instead of dropping it, he raised it towards them. Fortunately, the law enforcement officers were able to subdue him without firing a shot. When they entered the apartment, they found that Mr. Caliore had been living on a cot underneath a camouflage netting and that the apartment was covered with pictures of militant African adults and children with writing on them. Mr. Caliore's mental health leading up to that event and after that event was clearly not that of a normal person. He was ultimately diagnosed by multiple doctors with paranoid schizophrenia. I think that specific diagnosis is important here, and the district court certainly considered it when coming to this conclusion. A schizophrenic is someone that misinterprets reality. However, a paranoid schizophrenic is an individual that misinterprets reality by misperceiving others' actions as threatening. It's an illness that particularly lends itself to putting the person that suffers in danger and endangering others. So is it your view that anytime someone is diagnosed as a paranoid schizophrenic, that that, along with the evidence of a prior conviction or prior acts, is by itself enough to warrant imposed medication? Certainly not, but it's two factors that I think are important here. So what is it besides that that makes this case different? So what makes this case different is, viewing it through that lens, two doctors testified. The doctor that treated Mr. Caliore and issued the voluntary commitment order to have him committed, and he ended up being committed for 28 days, and the doctor that took care of him while he was involuntarily committed. The doctor that was the outpatient treating doctor testified that Mr. Caliore, when untreated and paranoid, is a danger to himself and others. He said without medication, his dangerous past behavior can reoccur. Dr. Sunderland, who treated him when he was committed, did eventually discharge him, and he explained why he discharged him. He explained that the defendant hadn't made any threats or committed any violent acts while in the hospital. But he also said that he was very uncomfortable with the relative risk of the patient, and that it was not much of a stretch that under stress, Mr. Caliore would act on his persecutory fears. So there's two doctors that the court relied on in this case, speaking to his current status. Did the condition, it doesn't extend beyond his supervised release, does it? No. In other words, just a condition of his being released as part of his sentence into society. Correct. It's in fact a tweaking of a supervised release condition that already existed. The sentencing judge in Washington had... When he finishes serving his supervised release, the medication order will not exist. Correct. I think third, with respect to dangerousness, is that the court found that Mr. Caliore was currently experiencing delusions that were similar to the delusions he experienced when he committed the underlying offense, and appeared to be considering actions similar to the underlying criminal conduct. This specifically was an obsession with the FBI, where he is now in the... Directly before he was committed, while on supervised release, the probation officer was able to determine through a search of his cell phone that he had spent an enormous amount of time on the internet. He had gone to websites that focused on shotguns, on the FBI, on nuclear secrecy, and on Africa. Now, in a vacuum, none of that's all that particularly concerning. But in light of his past conduct, it is very alarming, because those are the exact sort of obsessions and things that he was idiosyncratically focused on in and around the prior conduct. That also includes, there was testimony of him being staying up all night, listening to the radio all night. It was found out on the underlying case that that was because he was getting messages from the radio. He's doing both those things again. In both instances, then and now, he's socially isolated. He's covering his face and refusing to talk to medical doctors, which, of course, is his right. But as the doctors pointed out, it's also a sign that he is experiencing paranoid delusions. And he made a threat while on supervised release. He told his dad, in the presence of the probation officer, Dad, you know what I'm capable of. Just ask Obama. Well, in light of the fact that he was convicted for threatening the President of the United States, who was Obama at the time, that statement, I think, is undisputedly a threat to his father. The court also found, moving on to danger to himself, that given the fact that he was looking at multiple images of suicide by gunshot wound on his computer and various methods of suicide on his computer, despite the fact he denied suicidal ideation, although throughout the case it's clear that Mr. Cagliari is not forthcoming and not the best historian with respect to his mental health history, that because he was looking at those things, and because of his illness, he did constitute a danger to himself. It's noted that the leading cause of unnatural death in schizophrenia by one of the doctors in the cell hearing in the Washington case is suicide. So the court thought he might harm himself, but the court also realized that his violent conduct towards others could result in harm to him, as it almost did when he committed the offense in Washington. The court did consider the nature of the defendant's liberty interest. The court recognized that that is a significant liberty interest. But the court also noted that it's slightly different things at play than in the Harper case. Yes, it's forced or compelled medication. Why is it forced? You know, I think you're making this case more complex than it is. The court explicitly said that she was not forcing the medication. Basically it was a condition of supervised release. He could go back to jail if he didn't want to be in the public, but the court has some responsibility during supervised release as part of the sanctioning of protection in the public. Once that's over, he has a choice. He doesn't have to take the medication. He can go back and serve his time if he wants. So it's really part of the incarceration modification process, and the court explicitly said that she wasn't ordering him to take the medication. She made it a condition of his release to the public. That's certainly true, and it's why at the beginning of my address to the court I used the word compelled and not forced. Forced is used throughout the case law. You think, and it is in those cases, you're strapping someone down and sticking it. We have cases like that too. Right. You're right. This is not that case. It's Mr. Caliore, you can comply and take your medicine as the court's order, or you're going to come back and see me and I can violate you. So there is a level of free will there. It's compelled, not forced. Also different because it's a second generation antipsychotic, which there was much testimony about and documents submitted on that the side effects, the serious side effects that the Supreme Court is clearly worried and justifiably worried about in Harper are not as prevalent in the second generation. Also the court points out that Mr. Caliore has taken this medicine and done well and not experienced any of those significant side effects. The court also found out, held that the medicine was medically appropriate, as a majority of the doctors have said in this case, and that there was no less intrusive option. And there wasn't because he previously had a supervised release condition that ordered him to take the meds. However, it allowed him a hearing and an admonishment before being violated. That's the tweak here. No longer does he get the hearing and the admonishment, he's being admonished, he's had his due process, and he is now ordered to take the medication. The district court here got it right, certainly did not abuse its discretion, did not act irrationally, no erroneous findings of fact, and I ask this court to affirm its decision. Why is the district court opinion sealed? The district court opinion is sealed because it... You're arguing here in open court about the public, and the district court opinion says it's filed under seal. Because it refers specifically to some of Mr. Caliore's medical... Well, there are situations when you can redact things, but you don't normally seal courtrooms in criminal proceedings. I mean, there's transparencies of the court proceedings, and it's an important matter. Did anybody take up whether all this needed to be sealed or not? You haven't asked for this argument to be sealed? No, Your Honor. You're arguing about it as if it's all out in the open. That's the thing that jumped off the page here to me. I don't know why... Is the whole file sealed down there? The opinion... The medical reports... ...says it's under seal. The medical reports are sealed. The discussions, the legal principles, the background of this guy, and all that stuff, what he's done... He's broken it. Check on those things. Understood, Your Honor. And if it's sealed, you should take steps to get all or part of the arguments sealed. We don't unseal the things in the district court. Anyway, I just thought I'd put that out there. Thank you, Your Honor. Thank you. All right, Mr. Gates. Just a couple of points briefly. In my experience, incarceration is a stressor. And Mr. Caliore was incarcerated, well, held against his will for 28 days, then got out for a day or two, and was in custody until the supervised release hearing. Yet there was no evidence of any delusions at any point. I would submit that if a person suffering from paranoid schizophrenia is going to become delusional in the absence of medication, that would be provoked... I'm sorry? How would you characterize his confrontation with the officers? I mean, that was pretty... Could have been a pretty dicey situation. At his initial arrest? Don't you think he was delusional? He was clearly delusional. I mean, he was found not capable of proceeding. He was forcibly medicated for... And he's issued these threats everywhere. And if something happened while he's on supervised release, and the authorities didn't take some kind of measures to protect against these risks, wouldn't there be an outcry that, why didn't you protect the public from somebody who has this tendency? I think that's always going to be a danger when you're talking about, well, why should you even have let him out on supervised release at all? Why didn't you just... Subject to the condition that he get himself in a position that he's not a danger to the community himself. And so the... Basically, what the district court said is that it's a condition for my letting you out. And it didn't work. Very carefully, the old court did not order him to take this. The court says, if you want to be out on supervised release, it's a condition. You're going to have to take this because we have all this evidence and all this data that shows that, number one, you're benefiting, but number two, if you're not, there's a real risk to the public and to yourself. It seems to me sort of straightforward, isn't it? I would disagree. It's free will to say, you could decide to take the medication or not, but if you don't, we're going to send you to prison. He was convicted and sentenced. This is part of his sentence. True, but that's the Holman case. The Holman case occurred in the context of supervised release. Supervised release is part of his sentence. But there's a... Holman teaches that there is a... Forced medication is an unusual condition of supervised release and can only be imposed when there is a danger, when the person is a danger to themself or others, and if there was a continuing danger,  And we've reviewed this for abuse of discretion. How do you get around that? I would simply contend, if there was a danger... Meaning he's threatening the President of the United States? He's raising a shotgun to the officer? I would simply discount those because of the passage of time and the more... It was Dr. Sunderland who initiated... Well, it was Dr. Kalia who initiated the commitment. It was the doctor who was supervising the commitment, Dr. Sunderland. He was the one who determined at the end of the 28 days, Mr. Kaliuri was not a danger to himself or others, and he couldn't justify continuing to hold him under the involuntary commitment. So if Dr. Sunderland felt there was a danger, he certainly could have gone back to the state court and extended the commitment. So you've got conflicting evidence in the record about that. You've got your doctor, there's a doctor that says otherwise. You've got his conduct post-release from the hospital where he again engages with the probation officer, parole officer, and his father and makes a threat similar to what he did before. You've got the findings on the computer regarding his obsession with weapons and children fighters in Africa. Why isn't that relevant to the analysis? I think the timing may be different. I think the information on the computer was before the involuntary commitment. He was only out for a very, I think only a matter of days before the involuntary commitment was issued. I think it's hard to tell from looking at somebody's internet history how much time they spent on the computer. The FBI.gov website is there for anyone to look at. If he was obsessed with the FBI, obsessed with the government, why wasn't any of that observed during the time that he was spending the 28 days being observed during the involuntary commitment or while he was incarcerated? Why aren't there rants and raves from the jail, phone calls, letters? None of that exists in this case. That goes to the state of mind at the time. I would contend that that's more relevant than what happened several years ago. Alright, thank you Mr. Gates. Thank you. I also note that you're court appointed and I want to thank you and acknowledge your service to the court. Thank you, Your Honor.
judges: Paul V. Niemeyer, Robert B. King, Albert Diaz